UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*In re* PAUL R. SAGENDORPH, II      *
     *
_____      *

WELLS FARGO BANK, N.A.,      *
     *
        Appellant,      *
     *      Civil No. 15-40117-MGM
            v.      *
     *
PAUL R. SAGENDORPH, II,      *
     *
        Appellee.      *

MEMORANDUM AND ORDER REGARDING BANKRUPTCY APPEAL
(Dkt. No. 1)

January 23, 2017

MASTROIANNI, U.S.D.J.

## I.      INTRODUCTION

Paul Sagendorph ("Debtor") is the debtor in a Chapter 13 bankruptcy proceeding. His

amended Chapter 13 plan sought to vest title to certain property in one of his creditors, Wells Fargo

Bank, N.A. ("Wells Fargo"). Wells Fargo objected to this provision of the plan, but the Bankruptcy

Court overruled the objection and confirmed the plan based on the court's interpretation of the

statutory provisions presently at issue. Wells Fargo has appealed the decision of the Bankruptcy

Judge.

## II.      FACTS

The facts in the record are undisputed. On July 30, 2014, Debtor filed a voluntary Chapter

13 petition. (*See* Dkt. No. 9, Bankruptcy Court Record ("Bankr. Rec.") at 16–21.) On August 15,

2014, Debtor filed his initial reorganization plan. (*Id.* at 22–30.) The plan indicated Debtor owns

three income-producing properties. (*Id.*) The plan provided that each of the mortgagees on the three

properties would be paid in full through the surrender and vesting of title to each property. (*Id.* at

25.) Wells Fargo is the mortgagee of the income-producing property located at 51 Pleasant Street, Ware, Massachusetts. (*Id.*) The initial plan treated all of Wells Fargo's secured claims in the property identically. (*See id.*) The value of the property at issue is approximately $89,000, (*id.* at 26), which is more than Wells Fargo's secured claim of $61,498.99.[1] (Dkt. No. 14, Brief of Wells Fargo ("B. Wells Fargo") at 2.) Wells Fargo did not consent to the vesting provision, and objected to the plan on that basis. (Bankr. Rec. at 34–35.) The Bankruptcy Court sustained the objection, but left open the possibility of confirming a plan with a vesting provision, and gave Debtor leave to file an amended plan addressing Wells Fargo's concerns. (*See id.* at 72, 125.)

On February 10, 2015, Debtor filed an amended plan still calling for title to the property to vest in Wells Fargo. (*Id.* at 73–83.) The amendment clarified Wells Fargo's mortgage was the only encumbrance on the property. (*Id.* at 76.) Over Wells Fargo's renewed objection, (*id.* at 87–88), the Bankruptcy Court confirmed the amended plan by order dated August 3, 2015. (*Id.* at 143–45.) The confirmation order treated Wells Fargo's claim as follows:

> Debtor is surrendering the property located at 51 Pleasant Street, Ware, Massachusetts in full satisfaction of the secured claims. Wells [Fargo] will foreclose on the property in full satisfaction of the Mortgage, Note and any outstanding fees. *Pursuant to [11 U.S.C.] §§ 1322(b)(8) and (9), title to the property located at 51 Pleasant Street, Ware, Massachusetts shall vest in Wells [Fargo]*, and/or any/all successors and/or assigns, upon confirmation, and the Confirmation Order shall constitute a deed of conveyance of the property when recorded at the Registry of Deeds.

(*Id.* at 144 (emphasis added).) Wells Fargo appealed the confirmation order to this court. (*Id.* at 147.)

---

[1] Debtor valued the total amount of recorded liens at $60,545.41, (Dkt. No. 9, Bankruptcy Court Record ("Bankr. Rec.") at 26), after which Wells Fargo filed a proof of claim asserting the amount indicated above. (*See* Dkt. No. 14, Brief of Wells Fargo at 2.)

### III.   STANDARD OF REVIEW

The Court reviews the Bankruptcy Court's legal determinations *de novo*. *See In re Clifford*, 255 B.R. 258, 263 (D. Mass. 2000). The Court reviews the Bankruptcy Court's factual findings for clear error. *Id.*

### IV.   BACKGROUND

Wells Fargo brings this case under Chapter 13 of the federal Bankruptcy Code ("the Code") to resolve a significant question of statutory interpretation. Chapter 13 regulates the reorganization of an individual debtor's arrearage. This is in contrast to Chapter 11, which generally pertains to the reorganization of business-related debt, and Chapter 7, which governs the process of liquidation. At issue is whether, in full satisfaction of a claim, a debtor may transfer title to collateral property to a secured creditor over the creditor's objection. The statutory provisions relevant to resolving this dispute are 11 U.S.C. §§ 1322(b)(8), 1322(b)(9), and 1325(a)(5)(C).

Sections 1322 and 1325 establish, respectively, the content and methods of confirming a proposed reorganization plan. Section 1322(a) enumerates mandatory plan provisions, while section 1322(b) specifies the provisions permitted in a debtor's reorganization plan, any one or multiple of which a debtor may choose to include. *See* 11 U.S.C. §§ 1322(a)–(b). Subsection 1322(b)(9) in particular states a plan may "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." Section 1325 describes the standards for confirming a proposed reorganization plan. Subsection 1325(a)(5) enumerates three bases for approval. *See id.* §§ 1325(a)(5)(A)–(C). If, with regard to a debtor's secured claim(s), any one of these bases applies, the proposed plan must be confirmed. *See id.* § 1325(a) (stating plan "shall" be confirmed). A plan may not be confirmed unless it satisfies one of 1325(a)(5)'s conditions. *See Bank of N.Y. Mellon v. Watt*, No. 3:14–cv–02051–AA, 2015 WL 1879680, at *4 (D. Or. April 22, 2015). The first of these conditions, not relevant in this case, is acceptance. *See id.* § 1325(a)(5)(A). Also

grounds for confirmation is Chapter 13's "cramdown" provision, pursuant to which a debtor may retain collateral property by paying its replacement value. *See id.* § 1325(a)(5)(B). Finally, and at issue here, is section 1325(a)(5)(C), which mandates confirmation if, with respect to the holder of a secured claim, "the debtor surrenders the property securing such claim to [its] holder."

The question presented is whether a surrender of collateral property, as permitted by section 1325(a)(5)(C) of the federal Bankruptcy Code, imposes on secured creditors a requirement to accept vesting of that property. In analyzing this question, the Court recounts in detail the Bankruptcy Court's holding, the reasoning behind its holding, and the parties' arguments. The result is a detailed accounting and analysis of the issues leading to this appeal. Given the importance of the issue at hand, the Court finds such an extended discussion appropriate.

Bankruptcy Court Decision

The Bankruptcy Court for the District of Massachusetts confirmed Debtor's proposed reorganization plan, whose terms vested collateral property in mortgagee Wells Fargo over the bank's objection. (*See* Bankr. Rec. at 123–34, 143–45.) As formulated by the court, the key inquiry was whether "[section] 1325(a)(5) occupies the field with respect to in-kind payment" of secured claims such that vesting under 1322(b)(9) "must yield to the provisions of that section." (*Id.* at 127–28.) The Bankruptcy Court ruled forced vesting in full satisfaction of a claim permissible so long as a plan is proposed in good faith and is "otherwise in compliance with the Code." (*Id.* at 129.) *See also* 11 U.S.C. § 1325(a)(3) ("[T]he [bankruptcy] court shall confirm a plan if the plan has been proposed in good faith and not by any means forbidden by law."). The court provided several rationales. It rejected the reasoning articulated in cases such as *In re Tosi*, which deemed "surrender" pursuant to 1325(a)(5)(C) and "vesting" pursuant to 1322(b)(9) mutually exclusive. 546 B.R. 487, 494 (Bankr. D. Mass. 2016); *see also id.* ("A [reorganization] plan cannot . . . both [surrender and vest] while giving

full and proper meaning to each term; and a plan that purports to do both at once must be denied confirmation as internally inconsistent."). The *Tosi* court reasoned that because vesting is not surrender, vesting cannot, by definition, satisfy 1325(a)(5)(C)'s surrender requirement. As in *Tosi*, the Bankruptcy Court in this case recognized 'surrender' and 'vest' as distinct legal acts. (*See* Bankr. Rec. at 126–27, 130.) However, rather than treating these terms as mutually exclusive, the court emphasized the relationship between the two. (*See id.* at 130 (finding forced vesting provisions confirmable because vesting under 1322(b)(9) "presupposes its surrender by the transferor"); *see also id.* ("Surrendering or 'ceding possessory rights' . . . is a preliminary step in the process of transferring title." (citation omitted)).) It concluded a debtor vesting property has necessarily surrendered it, thereby satisfying the stricture of 1325(a)(5)(C), and giving rise to a right to plan confirmation.

In support of this interpretation, the Bankruptcy Court compared section 1322(b)(9) to what it considered an analogous provision in Chapter 11. (*Id.* at 131–32.) Under this provision, known familiarly as Chapter 11's "dirt-for-debt" provision, a forced vesting plan providing for the "transfer of all or any part of the property of the estate to one or more entities," and complying with all other applicable Code provisions may be confirmed. *See* 11 U.S.C. § 1123(a)(5)(B) (mandating "adequate means," such as transfer, for a plan's implementation); *see also* 11 U.S.C. § 1129(b)(2)(A)(iii) (allowing confirmation of a plan rejected by a creditor so long as the creditor receives the "indubitable equivalent" of its claim). This protects "what is really at stake in secured credit: repayment of principal and the time value of money." *In re Pac. Lumber Co.*, 584 F.3d 229, 246 (5th Cir. 2009). This in turn safeguards creditors' rightful contractual expectations. Because applying the indubitable equivalence principle in the Chapter 13 context serves both debtors' and creditors' interests in the same way, the Bankruptcy Court rationally applied this standard to the Chapter 13 plan at issue. The court further noted such a reading harmonizes the remedies available under Chapters 11 and 13,

which has the desirable result of promoting consistency within the Code. (Bankr. Rec. at 131–32.) *Cf. United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 373–75 (1988) (rejecting an interpretation of certain Code provisions as substantively and structurally inconsistent with other provisions).

The Bankruptcy Court looked also to equitable considerations. In particular, it emphasized Debtor's plan had been proposed in good faith. (*See* Bankr. Rec. at 132–33.) *See also* 11 U.S.C. § 1325(a)(3) (conditioning confirmation on a plan being proposed in good faith). Debtor's plan did not seek to, for example, pass off the burdens of environmental liability or deterioration to Wells Fargo. (*See* Bankr. Rec. at 132–33.) Nor was the property subject to other liens or encumbrances. (*See id.*) The potential risk to Wells Fargo, the Bankruptcy Court further observed, was low because the bank was oversecured and would therefore suffer no deficiency. (*Id.*)

Finally, the court underscored the importance of the federal interest in the Bankruptcy Code's "fresh start" policy, and ruled state laws inconsistent with this principle preempted. (*Id.* at 131.) Accordingly, the court upheld forced vesting provisions, finding they furthered the 'fresh start' interest by fully discharging a debtor's arrearage. (*Id.*)


Parties' Arguments

A. Wells Fargo

Wells Fargo argues confirmation of forced vesting plans is contrary to the plain language of section 1325(a)(5) and to "the concept of 'surrender' and the consequences that flow therefrom." (Dkt. No. 25, Reply Brief of Wells Fargo ("R.B. Wells Fargo") at 3.) The bank asserts the plain meaning of the statutory language cannot be read to allow a debtor to simultaneously surrender its property under section 1325(a)(5)(C) and vest title in a creditor under section 1322(b)(9). (*Id.* at 2–3.) To do so, it charges, would violate the statute in multiple ways. Most notably, such a reading

converts vesting from a bilateral disposition of property to a requirement unilaterally imposed by a debtor in violation of traditional legal principles. (*Id.* at 17 ("[I]t stands to reason that consent is required [for vesting] because the Bankruptcy Code cannot be read to permit a debtor to do something that is impossible outside of bankruptcy, absent express statutory direction." (citing *Butner v. United States*, 440 U.S. 48, 55 (1979))).) Furthermore, disregarding the respective definitions of 'surrender' and 'vest' in sections 1322(b)(9) and 1325(a)(5)(C) would render those terms synonymous in contravention of accepted canons of statutory interpretation, (*id.* at 3–4, 8 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 60 (2007); *Pejepscot Indus. Park v. Me. Cent. R.R. Co.*, 215 F.3d 195, 202 (1st Cir. 2000); *Freytag v. Comm'r*, 501 U.S. 868, 877 (1991)) (observing conflation of terms 'surrender' and 'vest' is not in keeping with the interpretational canon of superfluity)), and read an unjustified "fourth" or "surrender plus" option into the statute. (B. Wells Fargo at 17; R.B. Wells Fargo at 12.) According to Wells Fargo, properly effectuating the distinct meanings of 'surrender' and 'vest' requires the rejection of forced vesting provisions as unsupported by the plain terms of Chapter 13.

Wells Fargo also rejects the analogy drawn by the Bankruptcy Court between Chapter 11's dirt-for-debt provision, 1123(a)(5)(B), and Chapter 13's vesting provision, 1322(b)(9). (R.B. Wells Fargo at 19–20.) Wells Fargo attacks this analogy on several grounds. First, Wells Fargo asserts, this analogy is inaccurate. Section 1123(a)(5)(B) does not in itself authorize forced transfer. *See* § 1123(a)(5)(B) (identifying transfer only as 'adequate means' for plan implementation). Rather, forced transfer is effectuated under section 1129(b)(2)(A)'s "indubitable equivalent" provision, which is "conspicuously absent from Chapter 13." (*See* R.B. Wells Fargo at 19–20 (citing *In re Lemming*, 532 B.R. 398, 410 (Bankr. N.D. Ga. 2015)).) As with Debtor's plain language analysis, Wells Fargo contends, the analogy between sections 1322(b)(9) and 1123(a)(5)(B) requires an option not otherwise available be "read into" Chapter 13. (B. Wells Fargo at 31.) Wells Fargo further cites

11 U.S.C. § 103, which, under Wells Fargo's interpretation, makes "clear that the provisions of Chapter 11 apply only to Chapter 11 cases and the provisions of Chapter 13 apply only to Chapter 13 cases." (*Id.* at 32 (citing 11 U.S.C. § 103).) The essence of Wells Fargo's argument is that Congress's decision to eschew an express forced-vesting provision in section 1322(b)(9), coupled with the limited reach of chapter-specific remedies under section 103, precludes any implication of forced vesting.

Wells Fargo also takes issue with the Bankruptcy Court's finding that section 1322(b)(9) preempts Massachusetts law defining creditors' rights to refuse transfer of collateral property. Wells Fargo first asserts Massachusetts and federal law are not in conflict, and that the question of preemption therefore does not arise. (*Id.* at 25–26.) Even were preemption to apply, Wells Fargo adds, the federal government's interest in providing debtors with a 'fresh start' is too weak to justify trampling creditors' rights under state law. Moreover, the 'fresh start' principle cannot control any interpretation of sections 1322(b)(9) and 1325(a)(5)(C) because it is not an interpretational canon; at most, it informs statutory construction. (R.B. Wells Fargo at 15.) Accordingly, the 'fresh start' interest "should not be construed to allow a debtor to shift the burdens of property ownership onto others." (*Id.* at 10 (citing *Canning v. Beneficial Me., Inc. (In re Canning)*, 706 F.3d 64, 72–73 (1st Cir. 2013)).) Wells Fargo urges the 'fresh start' principle is not a debtor's panacea meant to completely absolve debtors of responsibility for rash or ill-advised financial decisions. (*Id.* at 9, 15 (citing *Arsenault v. JP Morgan Chase Bank (In re Arsenault)*, 456 B.R. 627, 631 (Bankr. S.D. Ga. 2011)).)

## B. Debtor Paul R. Sagendorph, II

Debtor sets forth two alternative theories meant to elucidate Congress's intent to allow forced vesting under 1322(b)(9) and 1325(a)(5)(C). Debtor first emphasizes the statute's plain language. Section 1322(b)(9) clearly sanctions the vesting of collateral property in a creditor. *See* 11

U.S.C. § 1322(b)(9) (stating a "plan may provide for the vesting of property of the estate"); (Dkt. No. 20, Brief of Debtor ("B. Debtor") at 13.) Taking this into account, Debtor reasons, "The Court cannot read the limitation [on forced vesting] proposed by [Wells Fargo] into the statute, as it is just not there."  (B. Debtor  at 13–14; *see also id.* at 14 ("The Supreme Court has instructed the lower court to apply the clear and unambiguous language of a statute unless doing so will lead to an absurd result." (citing *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002))).) To derive a consent requirement from statutory silence, Debtor concludes, would impermissibly constrain debtors' plan options under section 1322(b)(9) contrary to congressional intent.

Debtor further asserts that when read in combination, sections 1322(b)(9) and 1325(a)(5)(C) allow vesting over a creditor's objection. (*Id.* at 2.) Debtor's reasoning is twofold and originates in the term 'surrender' as it is used in section 1325(a)(5)(C). First, as is well-established, a "[c]ourt must confirm a plan over a creditors [sic] objection if the plan provides for the surrender of the property." (*Id.* at 15 (citing *Hamilton v. Wells Fargo Bank (In re Hamilton)*, 401 B.R. 539 (B.A.P. 1st Cir. 2009)).) *See also* 11 U.S.C. § 1325(a)(5)(C) (imposing requirement). Second, "[s]urrender is a preliminary step in the process of transferring title," (B. Debtor at 14 (citing *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006))), such that 1325(a)(5)(C) and 1322(b)(9) are "meant to work in tandem with each other." (*Id.* at 16.) Debtor suggests this interrelationship begets forced vesting; surrender under 1325(a)(5)(C) provides the basis for plan confirmation, then matures into vesting under 1322(b)(9). Because sections 1325(a)(5)(C) and 1322(b)(9) fall along the same continuum of rights, Debtor insists he "is not carving out a fourth option [or] proposing a 'surrender plus' option." (*Id.*)

In addition to his 'tandem theory,' Debtor relies on the statutory analogy between sections 1322(b)(9) and 1123(a)(5)(B) described by the Bankruptcy Court. Forgoing a word-by-word analysis of the statutory language, Debtor instead adopts the Bankruptcy Court's broad interpretive rationale,

(*id.* at 23), which considered it "a self-evident truth that wherever possible the reorganization rights of chapter 11 and chapter 13 debtors should be the same." (Bankr. Rec. at 131.)

With respect to preemption, Debtor emphasizes "[a] major [tenet] of the Bankruptcy Code is to provide a 'fresh start to the honest but unfortunate debtor.'" (B. Debtor at 5 (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007)).) "[T]he fresh start purpose of bankruptcy is frustrated whenever the debtor begins to incur post petition expenses related to property that is burdensome to the estate and of no value to the debtor" (known colloquially as a zombie mortgage). (*Id.* at 5; *cf. id.* at 8.) Therefore, Debtor insists, the court's allowance of vesting pursuant to 11 U.S.C. § 1322(b)(8) and (9) is not only necessary to "obtain a true fresh start," but also justifies preemption. (*Id.* at 5.)

### C. Amicus curiae National Association of Consumer Bankruptcy Attorneys

The National Association of Consumer Bankruptcy Attorneys ("NACBA") has filed an amicus brief in support of Debtor. Arguing in favor of forced vesting, NACBA stresses the absence of a statutory prohibition thereon. NACBA insists "there is nothing in the plain language of the Code" supporting Wells Fargo's position that, because "outside of bankruptcy[] 'acceptance' is required before a conveyance may take place," acceptance is also required under 1322(b)(9). (Dkt. No. 31, Amicus Br. of the Nat'l Assoc. of Consumer Bankr. Att'ys at 4.) Nothing in section 1322(b)(9) "says that a creditor may object to" a debtor's clear option to invoke 1322(b)(9), NACBA reasons, "imply[ing] that a debtor may force a mortgagee to take title." (*Id.* at 5.) NACBA concludes, absent statutory language to the contrary, both sections 1322(b)(9) and 1325(a)(5)(C) grant a debtor an entitlement to divest itself of collateral property. (*See id.* at 3–6.) NACBA further argues that, because Congress knows the difference between surrender and vesting, Congress meant vesting in

1322(b)(9) to allow just that: transfer of title. (*Id.* at 6–7 (quoting *In re Rosa*, 495 B.R. 522, 524 (Bankr. D. Haw. 2013)).)

As to preemption, NACBA agrees with Debtor that, due to the federal 'fresh start' interest, sections 1322 and 1325 preempt "[p]roperty interests . . . created and defined by state law." (*Id.* at 4 (quoting *Butner*, 440 U.S. at 55).) NACBA emphasizes the importance of section 1322(b)'s permissive provisions as malleable tools for debtor relief to be used at a bankruptcy court's discretion. (*Id.* at 3 ("The flexibility represented by these permissive provisions in the formulation of chapter 13 plans is central to congressional efforts to encourage the use of chapter 13.").) This reading, NACBA believes, is in keeping with Chapter 13's overall purpose of empowering debtors. (*Id.* at 5 (pointing out only a debtor may propose a reorganization plan and that the permission granted by sections 1322(b)(8) and (9) "is given exclusively to the *debtor*, not the creditor" (emphasis in original)).) To that end, section 1322(b)(9) should not be read in such a way as to thwart a debtor's prerogative in designing a reorganization plan.

## V.    DISCUSSION

### A.  Statutory language

The key issue facing the Court is the meaning of the words "vest" and "surrender" as they are used in sections 1322(b)(9) and 1325(a)(5)(C) of the Code. Specifically, the Court must determine whether and to what extent these terms interact to authorize forced vesting under section 1322(b)(9).

When interpreting a statute, a court first considers its "plain meaning." *See Caminetti v. United States*, 242 U.S. 470, 485 (1917); *see id.* (citing a number of cases). In determining whether statutory meaning is plain, a court must give words their ordinary definitions. *See, e.g., id.* at 485–86; *see also Richards v. United States*, 369 U.S. 1, 9 (1962). If the language at issue admits of only one meaning, "it

is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning," and the canons of construction "need no discussion." *Caminetti*, 242 U.S. at 484–85, 490. Only where statutory language is ambiguous are the traditional canons of construction applied to interpret its meaning. *See, e.g.*, *Woods v. U.S. Bank*, 831 F.3d 1159, 1162 (9th Cir. 2016). The threshold inquiry here is whether the plain language of sections 1322(b)(9) and 1325(a)(5)(C) requires or allows forced vesting.

The meaning of the word 'surrender,' whether used in the Bankruptcy Code or elsewhere, is plain and well-established in property law. *See, e.g.*, *Tosi*, 546 B.R. at 492 (finding the meaning of 'surrender' "settled and well understood," and listing four cases stating the same). Black's Law Dictionary defines 'surrender' as "[t]he giving up of a right or claim." (10th ed. 2014). Specific to section 1325(a)(5)(C), 'surrender' has been taken to mean the "'relinquishment of any rights in the collateral.'" *In re White*, 487 F.3d 199, 205 (4th Cir. 2007) (quoting 8 Collier on Bankruptcy ¶ 1325.06[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2005)); *see also id.* (citing *Hosp. Auth. Credit Union v. Smith (In re Smith)*, 207 B.R. 26, 30 (Bankr. N.D. Ga. 1997); *In re Stone*, 166 B.R. 621, 623 (Bankr. S.D. Tex. 1993)) (noting, "a number of bankruptcy courts called on to construe § 1325(a)(5)(C)" have "formulated" the same definition). The First Circuit has characterized surrender as a debtor's agreement "to make the collateral *available* to the secured creditor" by "ced[ing] his possessory rights" therein. *Pratt*, 462 F.3d at 18–19 (emphasis in original). In *Canning*, the First Circuit elaborated on this point, stating a secured creditor "has the prerogative to decide whether to accept or reject the surrendered collateral." 706 F.3d at 69–70; *see also Pratt*, 462 F.3d at 19 (stating, with regard to the definition of 'surrender' in section 521(a)(2), "nothing . . . remotely suggests that the secured creditor is *required* to accept possession of [collateral] . . . , as such a reading would be at odds with well-established law that a creditor's decision whether to foreclose on and/or

repossess collateral is purely voluntary and discretionary" (emphasis in original)). In light of this precedent, this Court defines 'surrender' as an offer to cede property rights to another.

In contrast, 'vest' is generally defined as "[t]o confer ownership (of property) on a person," "[t]o invest (a person) with full title to property," or "[t]o give (a person) an immediate, fixed right of present or future enjoyment." BLACK'S LAW DICTIONARY (10th ed. 2014). Vesting is not the unilateral act of the grantor, and elementary principles of property law make this clear. *See, e.g.*, *In re Weller*, 548 B.R. 392, 394 (Bankr. D. Mass. 2016) (finding "a debtor complies with the 'surrender' requirement of § 1325(a)(5)(C) by ceding the debtor's rights and making such property available to the creditor, but 'what a creditor then does, or doesn't do, with that property is left to the creditor's discretion under non-bankruptcy law'" (quoting *In re Cormier*, 434 B.R. 222, 229 (Bankr. D. Mass. 2010))). Vesting refers instead to the *acceptance* of surrender by the grantee, which consummates the legal act of transfer. In the apt words of the Bankruptcy Court in this case, "In the context in which these terms are used in the Bankruptcy Code, surrender is a less consequential event than vesting. Surrender means making the property available to be taken; vesting means transferring title." (Bankr. Rec. at 127.) *Accord HSBC Bank USA v. Zair*, 550 B.R. 188, 192–93, 203 (E.D.N.Y. 2016) (adopting statement). This Court joins in this view and defines 'vesting' as the acceptance of an offer to transfer ownership.

Recognizing 'surrender' and 'vesting' as distinct acts has led courts to rule against forced vesting. *See, e.g.*, *supra* page 4–5 (explaining the *Tosi* court's reasons for rejecting forced vesting); *see also Zair*, 550 B.R. at 202–03; *In re Malave*, 2014 Bankr. LEXIS 5383, at *2–4 (Bankr. S.D.N.Y. Apr. 11, 2014); *Rosa*, 495 B.R. at 524; *Arsenault*, 456 B.R. at 629–30; *Pratt*, 462 F.3d at 18–19. With those courts the Bankruptcy Court agreed to the extent it concluded "'vesting of property' in § 1322(b)(9) and 'surrender the property' in § 1325(a)(5)(C) are different and mean different things." (Bankr. Rec.

at 130.)[2] However, unlike those courts, the Bankruptcy Court here found this distinction consistent with forced vesting as a matter of statutory interpretation for several reasons. It is with respect to these reasons that this Court parts ways with the Bankruptcy Court's analysis.

The Bankruptcy Court first approved forced vesting by reading sections 1322(b)(9) and 1325(a)(5)(C) in combination, reasoning that because vesting presupposes surrender, inherent in vesting is the surrender required for plan confirmation under 1325(a)(5)(C). While admiring the elegance of the Bankruptcy Court's solution, this Court finds it problematic. This explanation mischaracterizes the chronological relationship between surrender and vesting. Surrender is a prerequisite action subsumed by vesting upon acceptance. The Bankruptcy Court's finding that vesting falls within the scope of 1325(a)(5)(C) transposes this relationship, rendering it legally incoherent. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) (citing *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 542–43 (1940)). This transposition also treats 'vest' and 'surrender' as synonymous in violation of multiple canons of statutory interpretation. *See generally, e.g., Ratzlaf v. United States*, 510 U.S. 135, 141 (1994) (explaining rule against surplusage, which warns against "interpret[ing] statutory provisions 'so as to render superfluous other provisions in the same enactment'" (quoting *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990))); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 259 (1994) ("[A] court should give effect to every provision of a statute and thus avoid redundancy among different provisions." (citing *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 & n.11 (1988)); *cf. Nat'l Fed'n of Indep. Business v. Sebelius*, 132 S. Ct. 2566, 2583 (2012) ("Where

---

[2] Noting the Code defines neither 'surrender' nor 'vesting,' the court drew a distinction between the two using case precedent and traditional definitions. "'Surrender,'" it observed, "has developed a distinct meaning in this circuit," namely, "to make the collateral *available* to the secured creditor [by] ced[ing] his possessory rights." (Bankr. Rec. at 126 (emphasis in original) (quoting *Pratt*, 462 F.3d at 19).) In contrast, 'vesting' "plainly means to place one in legal possession or ownership of property." (*Id.* (quoting BLACK'S LAW DICTIONARY (9th ed.)).)

Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally." (citing *Russello v. United States*, 464 U.S. 16, 23 (1983))). Lastly, this reading fails to account for the precatory language of section 1322(b). As previously established, "may" creates no entitlement to vesting of collateral property in a creditor. Nor does it establish the sufficiency of 1322(b)'s permissive provisions in independently satisfying the confirmation requirements of 1325(a)(5). "[N]othing in the language of the statute indicates that including one of [1322(b)'s] optional features *guarantees* the confirmability of the overall plan." *Zair*, 550 B.R. at 202 (emphasis in original) (citing *Watt*, 2015 WL 1879680, at *5); *see also id.* at 195 (stating that in *In re Rosa*, "[t]he [bankruptcy] court specifically noted that the 'surrender' option in § 1325(a)(5)(C) would not have 'fully validate[d]' the plan in that case precisely '*because* the debtor propose[d] vesting in addition to surrender'" (first two alterations added) (emphasis in original) (quoting *Rosa*, 495 B.R. at 524)).

In a peripheral argument substantively akin to its 1322(b)(9) analysis, the Bankruptcy Court found subsection (b)(8) supported the Court's endorsement of forced vesting under sections (b)(9) and 1325(a)(5)(C). As the Bankruptcy Court explained, interpreting 1322(b)(9) as allowing forced vesting "is consistent with and presents an avenue for effectuating § 1322(b)(8) which permits 'the payment of part or all of a claim against the debtor from property of the estate or property of the debtor.'" (*See* Bankr. Rec. at 130 (quoting 11 U.S.C. § 1322(b)(8).) The Bankruptcy Court is correct that, if valid, forced vesting would accomplish payment "from property of the estate or property of the debtor," as permitted by, and consistent with, the plain language of 1322(b)(8). This cannot, however, save the Bankruptcy Court's interpretation of subsections (b)(9) and 1325(a)(5)(C). As this court has established, forced vesting may not be accomplished under these provisions. Subsection (b)(8) cannot be operationalized using unavailable means. The fact that sections 1322(b)(9) and 1325(a)(5)(C) might facilitate subsection (b)(8) is ultimately immaterial.

The Bankruptcy Court also allowed forced vesting as a means of harmonizing various provisions of the Bankruptcy Code. "Applying § 1322(b)(9) consistently with its plain meaning," the court explained, "promotes coherence in the reorganization chapters of the [Code]." (*Id.* at 131.) On this logic, the court concluded that, "wherever possible the reorganization rights of chapter 11 and chapter 13 debtors should be the same." (*Id.*; *see also id.* at 132 ("[T]he differences between the two primary reorganization chapters [Chapters 11 and 13] should be cabined by explicit statutory mandate. In the absence of statutory directive, the two chapters should offer comparable relief to debtors who seek to reorganize.").) In exposition of this coherence, the Bankruptcy Court compared section 1322(b)(9) to its "chapter 11 analog," section 1123(a)(5)(B). (*Id.* at 132.) Section 1123(a) sets forth requirements a Chapter 11 reorganization plan "shall" meet. 11 U.S.C. 1123(a). One such requirement is to "provide adequate means for [a] plan's implementation." 11 U.S.C. § 1123(a)(5). Subsection 1123(a)(5)(B) in particular provides examples of 'adequate means' for implementation, among which is the "transfer of all or any part of the property of the estate to one or more entities." This language echoes that of 1322(b)(9), which allows "vesting of property of the estate . . . in the debtor or in any other entity," and 1322(b)(8), which permits "payment of all or part of a claim . . . from property of the estate or property of the debtor." Because the statutory language in these different sections is so similar, the Bankruptcy Court emphasized, sections 1123(a)(5)(B) and 1322(b)(9) should produce the same result—forced vesting.

The Bankruptcy Court was correct in noting both 1123(a)(5)(B) and 1322(b)(9) approve vesting as a means of discharging debt. This linguistic similarity cannot, however, alter the limitations imposed on Chapter 13 vesting by the statute's plain language. Any harmonization like that described by the Bankruptcy Court impermissibly distorts the plain language of these provisions. First, and most importantly, it ignores an additional pair of plainly distinct terms: "shall" and "may." Section 1123(a)(5) states "a plan shall" provide for vesting or other acceptable means of

implementation. Section 1322(b) states a plan "may provide for [] vesting." This contrasting use of 'shall' and 'may' is no small thing. 'Shall' makes section 1123(a)(5)(B) a mandatory provision, one which explicitly identifies transfer of collateral property as a necessarily 'adequate means' of carrying out that mandate. As it appears in "[a] plan may provide for," 'may' merely signals a desire for vesting on the part of the debtor as a means of plan implementation. 11 U.S.C. 1322(b)(9). Like 'vesting' and 'surrender,' these words are plainly distinct and no harmonization of the Code's chapters can massage away this distinction. *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 302 (1989) (comparing statutory provisions regulating appointment of counsel, and finding use of the term "shall" in one provision and "request" in another "bespeaks an intent not to authorize mandatory appointments of counsel" under the latter).

There is also a technical impediment to forced vesting by analogy, as Wells Fargo observes. In Chapter 11 plans, it is not section 1123(a)(5)(B) that effectuates forced vesting, but rather section 1129(b)(2)(A)(iii). Like 1325(a)(5), section 1129 prescribes confirmation standards. Forced vesting under 1123(a)(5)(B) may be accomplished pursuant to 1129(b)(2)(A), which compels a bankruptcy judge in certain circumstances to confirm a plan "deemed 'fair and equitable,'" *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070 (2012), even where there exists a "class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. 1129(b)(1). A plan is 'fair and equitable' if it meets one of three requirements, the third of which, 1129(b)(2)(A)(iii), is relevant here. This section mandates confirmation of a Chapter 11 plan allowing for "the realization by [objecting, secured creditors] of the indubitable equivalent of [their] claims." *Id.* § 1129(b)(2)(A)(iii).  Precedent has established that the value of collateralized real property equals— that is to say is indubitably equivalent to—the value of a creditor's secured claim. *See, e.g., In re Arnold & Baker Farms*, 85 F.3d 1415, 1423 (9th Cir. 1996) ("[A] creditor necessarily receives the indubitable equivalent of its secured claim when it receives the collateral securing that claim . . . ."). Thus, so

long as property is indubitably equivalent to a secured creditor's claim, and absent bad faith on the part of the debtor, forced vesting shall be deemed adequate means of implementing a Chapter 11 plan. This explicit, mandatory condition for confirmation under 1129(b)(2)(A) is quite clearly absent from 1322(b)(9), and belies any analogy between the two. In sum, neither 1322(b)(9) nor 1325(a)(5)(C) clearly permit forced vesting, while both 1123(a)(5)(B) and 1129(b)(2) do, creating a dual entitlement in Chapter 11 debtors to obligatory transfer of title.

Additionally, this Court appreciates the logic driving the Bankruptcy Court's analysis of statutory intent and effect. (*See, e.g.*, Bankr. Rec. at 131 (discussing the "paramount federal interest" behind the Code).) However, because the meaning of 'vest' and 'surrender' is plain, the Bankruptcy Court's consideration of these factors was inappropriate. The plain text of the Bankruptcy Code must begin and end our analysis. *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 136 S. Ct. 1938, 1946 (2016). Because the ordinary meaning of 'vest' and 'surrender' is plain, to interpret them differently would require this Court to assess factors such as congressional intent in defiance of the plain meaning rule. The Court declines to overstep its judicial role by examining further textual arguments or broader statutory purpose. Accordingly, this Court holds the plain language of section 1322(b)(9), considered alone or in combination with sections 1322(b)(8) and/or 1325(a)(5)(C), does not allow forced vesting of collateral property in an objecting creditor.

## B. Alternative statutory grounds

Notwithstanding the Court's conclusion in this case, the 'fresh start' principle is unquestionably a fundamental premise of the federal Bankruptcy Code. The Supreme Court "on numerous occasions has stated that (o)ne of the primary purposes of the Bankruptcy Act is to give debtors a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Perez v. Campbell*, 402 U.S. 637, 648 (1971) (alteration in

original) (internal quotation marks omitted); *see also id.* (collecting Supreme Court cases stating the

same). Accordingly, a "[c]ritical feature[] of every bankruptcy proceeding" is "the ultimate discharge

that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts."

*Cent. Va. Cmty. Coll. v. Katz,* 546 U.S. 356, 364 (2006) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234,

244 (1934)). Debtors who wish to relinquish property to a secured or oversecured creditor are

delayed their fresh start until the creditor acts to take possession of the surrendered property.

Finding forced vesting impermissible under sections 1322(b)(8), (b)(9) and 1325(a)(5)(C), this court

resists a detailed examination of whether there are other tools available to assist bankruptcy courts,

under some circumstances, in obtaining a fresh start for debtors. Though a creditor calculates its risk

when offering a mortgage, *In re Willie D. Brown,* No. 14–12357–JNF, slip op. at 23 (Bankr. D. Mass.

Mar. 4, 2016) (observing lenders "grant[] mortgages while cognizant of the risks of default and

bankruptcy"); *cf. id.* (noting mortgagees can mitigate losses by foreclosing), any such tool would

necessarily have to balance the appropriate safeguard of a creditor's legal right to protect its financial

wellbeing, a value equally present in the Code. But given bankruptcy courts' broad equitable

prerogative, this court ultimately doubts bankruptcy courts are wholly lacking in authority and ability

to balance the equities in a situation that includes forced vesting under Chapter 13.

 Bankruptcy courts "are essentially courts of equity, and their proceedings inherently

proceedings in equity." *Local Loan Co.,* 292 U.S. at 240; *cf., e.g.,* 11 U.S.C. § 105(a) (granting

bankruptcy courts the power to "issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of [the Code]"). A bankruptcy court is therefore entitled to

select the remedy it considers most just in a given case, taking into account any applicable statutory

constraints, the factual record, and the broader context in which the case arises. *See, e.g., In re:*

*Aéropostale, Inc.,* 555 B.R. 369, 396–97 (Bankr. S.D.N.Y. 2016) (observing "Bankruptcy courts 'have

broad equitable powers and the ability to invoke equitable principles to achieve fairness and justice

in the reorganization process,'" (quoting *LightSquared LP v. SP Special Opportunities LLC (In re LightSquared Inc.)*, 511 B.R. 253, 346 (Bankr. S.D.N.Y. 2014)), and to "'sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate'" (quoting *Pepper v. Litton*, 308 U.S. 295, 308 (1939))). *But see In re Oak Knoll Assocs., L.P.*, 835 F.3d 24, 34 (1st Cir. 2016) (stating a bankruptcy court may modify a creditor–debtor relationship only where "the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code" (citing *In re Jamo*, 283 F.3d 392, 403 (1st Cir. 2002) (internal quotation marks omitted)). In so doing, the bankruptcy court "is able to shape . . . malleable [equitable] principles so as to accommodate the changing needs and mores of society." *Great–W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 233 (2002) (Ginsburg, J., dissenting). Forced vesting under Chapter 13 not only addresses debtors' evolving needs in the aftermath of the housing market crisis, but is also "consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor–debtor relationships." *United States v. Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990); *see id.* (citing several cases stating the same). Accordingly, the Court, at a minimum, observes certain Code provisions might be further considered on the issue of confirmation of a forced vesting plan. For example, might the Code permit the forced vesting of property not a debtor's principal residence under section 1322(b)(2),[3] or with respect to residences subject to either short or long-term mortgages under any

---

[3] The Bankruptcy Court characterized the property at issue as an "income-producing," "multifamily property." (Bankr. Rec. at 123). The record therefore supports an assumption that the property is not the debtor's primary residence, but the Bankruptcy Court made no explicit finding on this point. *Compare In re Guilbert*, 176 B.R. 302, 305 (D.R.I. 1995) ("That the residence in which the debtor primarily resides is also a source of income to the debtor does not render it 'something other than a [primary] residence.'" (alteration in original)) *with Lomas Mortg., Inc. v. Louis*, 82 F.3d 1, 6 (1st Cir. 1996) ("[T]he antimodification provision of § 1322(b)(2) does not bar modification of a secured claim on a multi-unit property in which one of the units is the debtor's principal residence and the security interest extends to the other income-producing units."). Presumably for this reason, the Bankruptcy Court did not distinguish between forced vesting as applied to non-primary or non-residential property versus primary residences. The Court finds this distinction potentially relevant to, and perhaps demanding of, a more granular analysis of whether situations exist in which forced vesting is permissible under Chapter 13.

Code sections implicated by 1322(c)?[4] Or might there be circumstances in which a debtor may substitute in-kind payment for serial cash remittances? These questions fall outside the scope of this Court's review. *United States v. Millennium Labs. of Cal., Inc.*, 713 F.3d 662, 675–76 (1st Cir. 2013) ("It is a general rule . . . that a federal appellate court does not consider an issue not passed upon below." (alteration in original) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))). The Court therefore leaves any potential consideration of these questions, including whether the facts support addressing them on remand, in the able hands of the Bankruptcy Court.[5]

## VI. Conclusion

The appeal in this action asked the Court to evaluate the permissibility of forced vesting under sections 1322(b)(8), (b)(9) and 1325(a)(5)(C) of the federal Bankruptcy Code. After analysis, the Court holds the plain language of these provisions precludes forced vesting. The Court's holding reaches only the provisions presented here.

For the foregoing reasons, the Bankruptcy Court's Order Confirming Debtor's Chapter 13 Plan (Dkt. No. 1–1) is hereby REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

It is So Ordered.

　　　　　　　　　　　　　　　　　　　 /s/ Mark G. Mastroianni
　　　　　　　　　　　　　　　　　　　MARK G. MASTROIANNI
　　　　　　　　　　　　　　　　　　　United States District Judge

---

[4] As with the primary-residence distinction, the Bankruptcy Court did not address forced vesting as it pertains to short versus long-term mortgages under the provisions mentioned above.

[5] Both the Bankruptcy Court and the parties considered whether sections 1322(b)(9) and 1325(a)(5)(C) preempt state law. This court, again, resists weighing in on this issue for what could only be an academic analysis in the context here. The necessity of the Bankruptcy Court's preemption analysis was based on what this Court has found to be an erroneous reading of the statutory language. Having answered the operative question as presented, this Court leaves it to the Bankruptcy Court on remand to analyze and apply preemption doctrine if necessary.